## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| SCOMA CHIROPRACTIC, P.A., a Florida corporation, individually and as the representative of a class of similarly-situated persons,<br><br>           Plaintiff,<br><br>    v.<br><br>NATIONAL SPINE AND PAIN CENTERS LLC, a Delaware limited liability company, SPINE CENTER OF FL, LLC and PAIN MANAGEMENT CONSULTANTS OF SOUTHWEST FLORIDA, P.L., Florida limited liability companies,<br><br>           Defendants. | )<br>)<br>)<br>)<br>)  Case No.: 2:20-cv-430 -FtM-66MRM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF'S SUR-REPLY IN OPPOSITION
### TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Scoma Chiropractic, P.A. ("Plaintiff") submits its sur-reply in opposition to the Rule 12(b)(6) reply submitted by Defendants National Spine and Pain Centers, LLC, Spine Center of Florida, LLC, and Pain Management Consultants of Southwest Florida, P.L. (collectively, "Defendants").

### Argument

**First Amendment.** It cannot be credibly argued that 47 U.S.C. § 227(b)(1)(C) does not survive the "intermediate scrutiny" analysis set forth by the Supreme Court in *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980), and courts have repeatedly held that it does. (*See* Pl.'s Opp. at 16-20). Plaintiff further argued in its opposition that Defendants' attempt to have this Court apply strict scrutiny to § 227(b)(1)(C) was based on a mistaken reading of the Supreme Court decisions in *Reed v. Town of Gilbert*, 576 U.S. 155, 163

(2015), *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 564 (2011), and *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020). (*Id.* at 12-18). Defendants' reply continues to misunderstand and misapply these cases to § 227(b)(1)(C).

First, § 227(b)(1)(C) does not single out certain speakers for differential treatment, and it does not prohibit advertisements based on content. Nor does it prevent "solicited" fax advertising, advertising by telephone solicitation, advertising by direct mail, or in person solicitation, in accordance with the law. Instead, it prohibits unsolicited fax advertising for the reasons Congress identified in passing the TCPA—reasons that have repeatedly withstood the *Central Hudson* intermediate scrutiny. (*See* Pl.'s Opp. at 16-20). Thus, and contrary to Defendants' argument, the fact that § 227(b)(1)(C) addresses commercial speech does not, in and of itself, require strict scrutiny.

Second, Defendants misunderstand and misapply the Supreme Court's decisions in *Sorrell* and *Reed*. In *Sorrell*, the Court noted that pharmaceutical companies promote their drugs to doctors through a process called "detailing," which involves a scheduled visit to a doctor's office to persuade the doctor to prescribe a particular pharmaceutical. 564 U.S. at 557-58. Knowledge of a physician's prescription practices, called "prescriber-identifying information," enables a detailer to better understand which doctors are likely to be interested in a particular drug and how best to present a particular sales message. *Id*. at 558. Many pharmacies, which receive this prescriber-identifying information as a matter of federal regulation, sell it to "data minors," who in turn analyze it and produce reports that are thereafter leased to pharmaceutical companies. *Id*. Detailers use the reports to refine their marketing tactics and increase sales. *Id*

The Vermont statute at issue in *Sorrell* restricted the sale, disclosure, and use of pharmacy records that revealed the prescribing practices of individual doctors—that information could not

be "sold, disclosed by pharmacies for marketing purposes, or used for marketing by pharmaceutical manufacturers." *Sorrell*, 564 U.S. at 557. However, the statute's "exceptions" permitted the identical information to be disseminated for other reasons, including health care research, enforcing compliance with health insurance formularies or preferred drug lists, for care management, for law enforcement operations, and for purposes "otherwise provided by law." *Id*. 560-61. As held by the *Sorrell* Court, "the State has imposed content- and speaker-based restrictions on the availability and use of prescriber-identifying information. So long as they do not engage in marketing, many speakers can obtain and use the information. But detailers cannot." *Id*. at 571. Even then, as Defendants recognize, *Sorrell* applied *Central Hudson* intermediate scrutiny. (Doc. 28, Defs.' Reply at 4; *Sorrell*, 564 U.S. at 571-80).

Here, Defendants have not and cannot identify any specific individual or entity that is prohibited from advertising in its entirety under § 227(b)(1)(C), or any content-based restriction on fax advertising. Rather, all speakers are treated the same under § 227(b)(1)(C)—all are prohibited from advertising via unsolicited facsimile (unless they meet the requirements for the affirmative defense of established business relationship ("EBR"), including a compliant opt-out notice). Defendants have confused the regulation of a medium—unsolicited fax advertising—with content-based restrictions, of which there are none. Defendants' reliance on *Sorrell* to argue that § 227(b)(1)(C) is subject to strict scrutiny is misplaced and the argument made by Defendants based on *Sorrell* is simply wrong.

Relatedly, Defendants argue that Plaintiff's reading of § 227(b)(1)(C)—that it does not place speaker or content restrictions but only restricts a narrow medium, unsolicited fax advertisements, *see* Pl.'s Opp. at 17-18—"cannot be squared with *Reed*, which had no trouble concluding that a municipal sign code was content-based even though it applied only to a single

3

medium of 'outdoor signs.'" (Reply at 4 (citing *Reed*, 576 U.S. at 159)). Defendants again miss the mark.

*Reed* was premised on the same medium—signs—<u>being treated differently based on content</u>. The *Reed* Court held that the Sign Code at issue "singles out specific subject matter for <u>differential treatment</u>," and that the differing treatment of signs "is a paradigmatic example of content-based discrimination."  (Pl.'s Opp. at 14 (citing *Reed*, 576 U.S. at 169)). Again, as set forth above, Defendants here are unable to show that § 227(b)(1)(C) singles out any speaker or any subject matter for "differential treatment"—all are treated in identical fashion; unsolicited fax advertisements are prohibited in the absence of an EBR and compliant opt-out notice.

In sum, *Central Hudson* intermediate scrutiny applies, requiring denial of Defendants' First Amendment challenge.

<div style="margin-left:40%">

Respectfully submitted,

s/Ryan M. Kelly
Ryan M. Kelly – FL Bar No.: 90110
ANDERSON + WANCA
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
Telephone:  847-368-1500
rkelly@andersonwanca.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/ Ryan M. Kelly