UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOMA CHIROPRACTIC, P.A., a Florida
corporation, individually and as the
representative of a class of similarly situated
persons,

      Plaintiff,

v.                                        Case No. 2:20-cv-430-JLB-MRM

NATIONAL SPINE AND PAIN CENTERS
LLC, a Delaware limited liability company,
SPINE CENTER OF FLORIDA, LLC, and
PAIN MANAGEMENT CONSULTANTS OF
SOUTHWEST FLORIDA, P.L., Florida
limited liability companies,

      Defendants.
_____/

## **ORDER**

"Although faxes have become almost a relic of the past for most consumers, due to patient privacy laws, healthcare professionals still rely on faxes for certain communications." Fischbein v. Olson Research Grp., Inc., 959 F.3d 559, 564 (3d Cir. 2020). "This, of course, renders them a very captive and easily identifiable audience, as one of the few subgroups in the population that still commonly employ the use of a fax machine." Id.

Plaintiff Scoma Chiropractic, P.A. ("Scoma") no longer wishes to be part of this captive audience. In the latest of its many similar lawsuits,[1] Scoma claims that Defendants National Spine and Pain Centers, LLC; Spine Center of Florida, LLC;

---

[1] (Doc. 21 at 3 n.1.)

and Pain Management Consultants of Southwest Florida, P.L. (collectively "Defendants") violated the so-called junk-fax provision of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(C), by sending Scoma an unsolicited fax advertisement. Accordingly, Scoma brings a TCPA claim on behalf of itself and a putative class of its fellow captive audience members. (Doc. 1.)

Defendants move to dismiss Scoma's claim and argue that: (1) their fax is not an "advertisement," and (2) the TCPA's junk-fax provision violates the First Amendment because it is a content-based restriction on speech that cannot withstand strict scrutiny. (Docs. 21, 28.) Scoma responds that: (1) a reasonable trier of fact could conclude that the fax was an advertisement, and (2) the junk-fax ban is a restriction on commercial speech subject to intermediate scrutiny, which it easily satisfies. (Docs. 25, 43.)

After reviewing the parties' well-written briefs (including a reply and a rarely permitted sur-reply), and the Government's brief in support of the junk-fax provision's constitutionality, the Court holds that a reasonable trier of fact could indeed find that the fax was an unsolicited "advertisement." But the Court declines to reach Defendants' constitutional argument at the pleading stage. While the parties and the Government have presented well-reasoned arguments on whether the junk-fax ban violates the First Amendment, everyone has simply assumed that the level of constitutional scrutiny applied to the junk-fax ban necessarily governs its ultimate constitutionality. The Court declines to make that assumption. Accordingly, Defendants' motion to dismiss is **DENIED** without prejudice to

Defendants' ability to re-raise their constitutional argument at the summary judgment phase (if they wish).  Should Defendants again challenge the junk-fax ban's constitutionality at summary judgment, they must address the additional issues raised in this Order.

## BACKGROUND

Sometime in April 2020, Scoma received a fax with a bold header that reads, "In-Office Telemedicine Appointments for Pain Available!"  (Doc. 1-1.)  The fax was apparently sent by Pain Management Consultants, P.L., but smaller text toward the bottom clarifies that this entity is an "affiliate" of National Spine and Pain Centers, LLC, and that any corresponding medical services are "provided" by Spine Center of Florida, LLC.  For now, the Court will assume (as the parties do) that the fax came from all Defendants.  In any case, the body of the fax reads:

> Pain Management Consultants is accepting appointments for in-office visits for urgent matters—as well as telemedicine appointments for non-urgent matters.
>
> Pain Management Consultants is making telemedicine immediately available to its affiliated providers and their patients seeking treatment of acute and chronic pain.  By quickly deploying telemedicine, not only is PMC providing an essential service to those suffering with pain, it is also helping to ensure patients don't end up in overburdened Emergency Rooms, where the risk of contracting coronavirus will surely be higher.
>
> Providers interested in scheduling appointments for patients may call PMC directly at the number below.  Patients may also visit the PMC website to facilitate immediate scheduling.

(Id.)  Below this language is a phone number and a website for scheduling appointments.  Immediately to the right of the language is a sizeable logo for "Pain

3

Management Consultants, P.L." (Id.)  In smaller print at the bottom of the fax, the narrative continues:

> **About Pain Management Consultants**: Pain Management Consultants is an affiliate of National Spine and Pain Centers (NSPC). For more than 30 years, NSPC affiliated providers have been pioneers in the relief of chronic and acute pain, through minimally invasive procedures and leading-edge clinical research.  Today, with more than 70 locations and 750 medical professionals facilitating nearly 1 million patient visits a year, NSPC continues to be the healthcare brand more people trust for access to pain relief providers than any other.  NSPC's stated mission is to end needless human pain and suffering by facilitating world-class care.  For more information, visit [the same website in the box above].

(Id.)  Scoma took exception to the fax and filed a class action complaint against Defendants for violating the TCPA.  (Doc. 1.)  Defendants move to dismiss because they believe their fax is not an advertisement as a matter of law, and because the TCPA's junk-fax ban violates the First Amendment.  (Doc. 21.)

Due to the weight of the questions presented, the Court permitted not only an opposition brief by Scoma, but a reply and a sur-reply.  (Docs. 25, 28, 43.)  The Court also notes that, due to the constitutional question, the Government has intervened and filed a brief defending the constitutionality of the TCPA's junk-fax provision.  (Docs. 33, 42, 50.)  But, as explained below, the Court declines to reach the constitutional question at this stage of the litigation.

## LEGAL STANDARD

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th

Cir.1998)). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## DISCUSSION

### I. A Reasonable Trier of Fact Could Conclude That the Fax is an Unsolicited Advertisement under the TCPA.

The TCPA generally prohibits four types of telemarketing practices, one of which is "us[ing] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (emphasis added); see also Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 373 (2012). The text of the statute defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). This definition is not especially helpful because it uses the word "advertising" to define what an "unsolicited advertisement" is.

Relying on both legal and general dictionaries, the Eleventh Circuit has held that advertising is "[t]he action of drawing the public's attention to something to promote its sale." Florence Endocrine Clinic, PLLC v. Arriva Med., LLC, 858 F.3d 1362, 1366 (11th Cir. 2017) (quoting Advertising, Black's Law Dictionary 59 (8th ed. 2004)). Thus, for a fax to be an advertisement, it "must draw attention to the

5

'commercial availability or quality' of . . . products to promote their sale." Id. at 1366–67 (quoting 47 U.S.C. § 227(a)(5)).

According to the Federal Communications Commission ("FCC")—which is delegated rulemaking authority by the TCPA—faxes that promote goods or services at no cost (like free magazine subscriptions or seminars) and faxes that purport to request survey responses may be advertisements if they "serve as a pretext to advertise commercial products and services." In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005, 21 F.C.C. Rcd. 3787, 3814–15 (2006) [hereinafter "2006 Order"]. "Thus, the FCC contemplates that savvy companies may devise a multilayered approach to avoid violating the TCPA and acknowledges that an otherwise benign fax may violate the TCPA if it ultimately leads to the promotion of goods or services." Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp., 232 F. Supp. 3d 1239, 1242 (S.D. Fla. 2017) (citing Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc., 106 F.Supp.3d 9, 13 (D.D.C. 2015)).[2]

Given the Eleventh Circuit's and the FCC's broad interpretations of the term "advertisement," dismissal for failure to state a claim seems rare in cases like this one; if a reasonable trier of fact could plausibly conclude that a fax might be an

---

[2] There is some confusion about whether FCC orders are binding on district courts. See generally Gorss Motels, Inc. v. Safemark Sys., LP, 931 F.3d 1094, 1102–03 (11th Cir. 2019). In this case, however, both sides rely on FCC orders without any suggestion that they may be nonbinding. The Court will therefore assume that the FCC Orders are at least persuasive authority. See Duran v. La Boom Disco, Inc., 955 F.3d 279, 286 n.21 (2d Cir. 2020).

advertisement based on the allegations in the complaint (accepted as true), then the plaintiff has stated a claim. Cf. Scoma Chiropractic, P.A. v. Jackson Hewitt Inc., No. 2:17-cv-24-FtM-38CM, 2017 WL 3149360, at *2 (M.D. Fla. July 25, 2017) ("Taking the allegations in the Complaint as true, the fax advertises 'Express Refund Advance' through Jackson Hewitt Tax Services, and is therefore an advertisement within the meaning of the statute."); Neurocare Inst. of Cent. Fla., P.A. v. Healthtap, Inc., 8 F. Supp. 3d 1362, 1367 (M.D. Fla. 2014) ("Neurocare has sufficiently pled that the faxes related to the 'commercial quality or availability' of Healthtap's services."); see also Florence Endocrine Clinic, PLLC, 858 F.3d at 1367 (citing, inter alia, Physicians Healthsource, Inc. v. Stryker Sales Corp., 65 F. Supp. 3d 482, 489, 499 (W.D. Mich. 2015)).

Defendants argue that Scoma's complaint must be dismissed because the fax is not an advertisement as a matter of law. After carefully considering the authority discussed above, the Court disagrees. At this stage, a reasonable trier of fact could plausibly conclude that the fax sent to Scoma is an advertisement.

The fax announces that "Pain Management Consultants is accepting appointments for in-office visits for urgent matters—as well as telemedicine appointments for non-urgent matters." (Doc. 1-1.) It continues, "Pain Management Consultants is making telemedicine immediately available to its affiliated providers and their patients seeking treatment of acute and chronic pain." (Id.) The fax then claims that telemedicine helps to "ensure patients don't end up in overburdened Emergency Rooms, where the risk of contracting coronavirus will surely be

7

higher." (Id.)  Immediately to the right of this text is a large logo for "Pain Management Consultants, PL." (Id.)  The middle of the page prominently features a phone number and a website link meant "to facilitate immediate scheduling" for "[p]roviders interested in scheduling appointments." (Id.)  And finally, in the proverbial fine print of the fax, there is a clarification that Pain Management Consultants is an affiliate of National Spine and Pain Centers, which "continues to be the healthcare brand more people trust for access to pain relief providers than any other." (Id.)

Viewing the facts in the complaint as true and drawing all inferences in favor of Scoma, a reasonable trier of fact may conclude that the fax is an advertisement because the language quoted above draws attention to Defendants' in-office and telemedicine services in order to persuade "affiliated providers" to schedule appointments for "their patients [who are] seeking treatment of acute and chronic pain."  Cf. Scoma Chiropractic, P.A., 2017 WL 3149360, at *2; Neurocare Inst. of Cent. Fla., P.A., 8 F. Supp. 3d at 1367.  Although the fax may not be geared toward the ultimate consumers of Defendants' services (i.e., patients), this detail is not dispositive.[3]  Cf. Elan Pharm. Rsch. Corp. v. Emp. Ins. of Wausau, 144 F.3d 1372, 1379 & n.11 (11th Cir. 1998) (explaining that communications that induce doctors to prescribe certain drugs would constitute "advertising" in a non-TCPA case).

---

[3] One line of the fax reads, "Patients also visit the PMC website to facilitate scheduling." (Doc. 1-1.)  The context if this language is unclear; it may be aimed at patients to whom the fax was sent, or it may simply inform "affiliated providers" that patients can schedule telemedicine appointments directly.

8

Defendants offer two counterarguments: (1) the fax is not an advertisement under the reasoning of a recent FCC ruling regarding emergency communications during the COVID-19 pandemic, and (2) the fax was merely informational and does not promote the sale of any product or service. The Court disagrees.

First, the FCC ruling that Defendants rely on is irrelevant. Besides the junk-fax ban, the TCPA contains another provision that generally bans calls "using any automatic telephone dialing system or any artificial or prerecorded voice," unless they are "made for <u>emergency purposes</u> or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A) (emphasis added); <u>see also</u> 47 U.S.C. § 227(b)(1)(B) (containing another "emergency purposes" exception for calls to residential telephone lines using an artificial or prerecorded voice without consent). On March 20, 2020, the FCC made a declaratory ruling that the COVID-19 pandemic was a national "emergency" under the TCPA, and therefore certain automated calls related to the pandemic were permitted. <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, No. CG02-278, 2020 WL 1491502, at *2 (OHMSV Mar. 20, 2020) [hereinafter "2020 Order"]. The FCC's ruling provides examples of calls that are made for emergency purposes and others that are not—the latter category includes calls that advertise things like grocery delivery services or health insurance, which might have increased relevance during a pandemic but are not relevant to "emergencies" in any meaningful sense. <u>Id.</u>

None of this information bears on the case at hand because the TCPA's junk-fax provision does not have an "emergency purposes" exception. <u>See</u> <u>In the Matter</u>

of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 31 F.C.C. Rcd. 13289, 13294 (2016). Nevertheless, Defendants insist that the FCC's declaratory ruling is relevant to this case because "emergency" calls are mutually exclusive from advertisements, and "[t]here is no reason to think that a particular message would be advertising if conveyed in a fax, but not if conveyed in a call or text message." (Doc. 21 at 10.) But there is indeed a reason: the text of the TCPA, which is the principal indicator of legislative intent, does not contain an "emergency purposes" exception in the junk-fax provision. The Court therefore declines to import the reasoning of the FCC's declaratory ruling into this case.[4]

Second, Defendants argue that the fax was informational—rather than commercial—based on various cases. (Doc. 21 at 12–16.) These cases all refer to the same 2006 Order discussed above, which explains:

> [F]acsimile communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules. An incidental advertisement contained in a newsletter does not convert the entire communication into an advertisement. Thus, a trade organization's newsletter sent via facsimile would not constitute an unsolicited advertisement, so long as the newsletter's primary purpose is informational, rather than to promote commercial products.

21 F.C.C. Rcd. at 3814–15. Then, in a footnote, the 2006 Order explains that to determine if something is a "bona fide 'informational communication,'" the FCC

---

[4] Even if the Court had followed Defendants' logic, the 2020 Order makes it very clear that, to fit within the emergency purposes exception, "the caller must be from a hospital, or be a health care provider, state or local health official, or other government official as well as a person under the express direction of such an organization and acting on its behalf." 2020 Order, 2020 WL 1491502, at *2. Defendants are not hospitals or government officials. It is unclear whether all three Defendants actually "provide" healthcare.

10

looks to a multitude of factors that are not at all apparent from the face of the pleadings in this case, like "whether the communication is issued on a regular schedule; whether the text of the communication changes from issue to issue; and whether the communication is directed to specific regular recipients, i.e., to paid subscribers or to recipients who have initiated membership in the organization that sends the communication." Id. at 3814 n.17.  As the Court has already explained, after viewing the facts in the complaint as true and drawing all inferences from those facts in favor of Scoma, a reasonable trier of fact could conclude that the fax was intended to be an advertisement, not an informational communication.

Accordingly, Scoma has done enough to state a claim capable of advancing past the pleading stage. See Arkin v. Innocutis Holdings, LLC, 188 F. Supp. 3d 1304, 1308 (M.D. Fla. 2016) ("Defendants' argument that the Fax is purely informational requires examination of factors such as its frequency, text changes from fax to fax, and whether or not the recipients are subscribers, i.e. information outside the four-corners of the Fax.").[5]  The fax received by Scoma could be an unsolicited "advertisement"  under the TCPA.

---

[5] Defendants note that the fax lacks typical hallmarks of sales, like prices or special offers.  (Doc. 21 at 14–15.)  But that does not mean the fax is informational—the Court has already explained that the fax may not be directed to the ultimate consumer of the services, so including the price would not make much sense.  Cf. Elan Pharm. Rsch. Corp., 144 F.3d at 1379 & n.11.  Defendants also note that the fax is directed to "affiliated providers," and therefore the purpose of the fact was to facilitate an ongoing relationship, not solicit new business.  (Doc. 21 at 14.) Neither the pleadings nor the parties' legal memoranda clarify whether Scoma has any ongoing relationship with Defendants.

11

## II. The Court Declines to Reach the Constitutionality of TCPA's Junk-Fax Provision at this Juncture.

The First Amendment unequivocally provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Over time, the Supreme Court's jurisprudence "has rejected an absolutist interpretation of those words." FEC v. Wis. Right To Life, Inc., 551 U.S. 449, 482 (2007). Accordingly, the degree of protection afforded by the First Amendment generally depends on how the speech and the challenged restriction are categorized. See, e.g., Otto v. City of Boca Raton, 981 F.3d 854, 865 (11th Cir. 2020) ("[C]ertain types of speech receive either less protection or no protection under the First Amendment.").

Defendants' constitutional challenge to the junk-fax ban asks the Court to thread the needle between two such categories. On one hand, content-based restrictions "are presumptively unconstitutional" and subject to strict scrutiny, which requires the restrictions be "narrowly tailored to serve compelling state interests." Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015). On the other hand, restrictions on commercial speech that concerns "lawful activity" and is not "misleading" must satisfy a three-prong test: (1) the government interest must be "substantial"; (2) the regulation must "directly advance[] the governmental interest asserted," and (3) the regulation cannot be "more extensive than is necessary to serve that interest."[6] Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447

---

[6] In the Eleventh Circuit's view, Central Hudson created a three-prong test subject to a threshold question of whether the speech concerns lawful activity and is not misleading, as opposed to a four-prong test. Ocheesee Creamery LLC v. Putnam, 851 F.3d 1228, 1235 (11th Cir. 2017).

12

U.S. 557, 566 (1980). The Supreme Court describes this as a form of intermediate scrutiny. See, e.g., Fla. Bar v. Went For It, Inc., 515 U.S. 618, 623 (1995).

Defendants argue that the junk-fax provision is a content-based restriction subject to strict scrutiny under Reed. (Doc. 21 at 17–23.) Scoma argues that the junk-fax provision is a restriction on commercial speech subject to intermediate scrutiny under Central Hudson. (Doc. 25 at 12–21.) The Government likewise argues that the constitutionality of the junk-fax provision is governed by the intermediate scrutiny of Central Hudson. (Doc. 50.)

After carefully reviewing the parties' arguments, the Court declines to address Defendants' constitutional challenge at this stage of the litigation because the parties (including the Government) have not fleshed out all the nuances that the constitutional question invites. Accordingly, the Court will deny the motion on the constitutional ground without prejudice to Defendants re-raising the issue, if applicable, on summary judgment. At that phase, the Court will have the added advantage of being able to consider matters beyond the pleadings. Cf. Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, 942 F.3d 1215, 1223 (11th Cir. 2019) (reversing a district court's dismissal of a constitutional First Amendment claim because it was "heavily fact-intensive").

If Defendants choose to re-raise their constitutional argument at the summary judgment phase, they should be prepared to discuss some of the issues identified below. For purposes of efficiency, Defendants may either incorporate

their prior arguments into their summary judgment motion by reference, or they may construct the argument from scratch.

First and foremost, all parties (including the Government) assume that the standard of review is dispositive in this case: either the junk-fax ban falls under strict scrutiny, or it survives under intermediate scrutiny. None of the parties envision a scenario where the junk-fax ban could survive strict scrutiny—in other words, the ban is "narrowly tailored to serve compelling state interests." Reed, 576 U.S. at 163. The Court is not prepared to assume—without discussion—that the level of scrutiny decides the junk-fax ban's constitutionality. Although it is "rare" for a speech restriction to be narrowly tailored to serve a compelling interest, "those cases do arise." Williams-Yulee v. Fla. Bar, 575 U.S. 433, 444 (2015).

Second, the parties have not yet adequately articulated what compelling or substantial interests the TCPA might serve. Just last year, a plurality of the Supreme Court upheld the TCPA's robocall restriction after severing from it a content-based exception for collection of federal debt. See Barr v. Am. Ass'n of Pol. Consultants, Inc, 140 S. Ct. 2335, 2347 (2020) (plurality opinion) [hereinafter "AAPC"]. In its severability analysis, the plurality concluded that the Government's interest in upholding the remainder of the robocall restriction was "protecting consumer privacy." Id. at 2348 (emphasis added). Regardless of whether this interest is compelling or substantial, it is not directly discussed by any of the parties. (Doc. 25 at 19.); see also Wollschlaeger v. Governor of Fla., 848 F.3d 1293,

14

1308 (11th Cir. 2017) (en banc) (holding that "protection of individual privacy" was at least a "substantial government interest" (citation omitted)).

Third, the Government draws a fine distinction between: (1) restrictions that "appl[y] to non-commercial speech in addition to commercial speech and [make] content-based distinctions within those categories"; and (2) restrictions that "regulat[e] only commercial speech." (Doc. 50 at 14.) The Government believes that the junk-fax ban falls into the latter category and is therefore distinguishable from cases like Reed. Accord AAPC, 140 S. Ct. at 2364 (Gorsuch, J., concurring in the judgment in part and dissenting in part) (explaining that, in his view, the robocall ban implicates both political and commercial speech, and therefore the entire robocall ban should be struck down). But the FCC has broadly construed the term "advertisement" to include even communications that do not overtly sell or promote any goods or services. 2006 Order, 21 F.C.C. Rcd. at 3814–15; see also M3 USA Corp., 232 F. Supp. 3d at 1242 ("[A]n otherwise benign fax may violate the TCPA if it ultimately leads to the promotion of goods or services." (citing Drug Reform Coordination Network, Inc., 106 F. Supp. 3d at 13)). None of the parties have addressed whether the FCC's broad construction potentially expands the junk-fax ban to non-commercial speech. And if it does, then the Government's nuanced position may not carry the day.

Fourth, as already mentioned above, the question of whether the junk-fax ban serves a compelling or significant interest would be better addressed at the

15

summary judgment phase because the Court would have the benefit of extrinsic evidence.  Cf. Cambridge Christian Sch., Inc., 942 F.3d at 1223.

Given these unaddressed issues in the parties' briefing, the Court finds it prudent to defer deciding the constitutional issue at this time.  Accordingly, the Court denies Defendants' motion to dismiss without prejudice to reassert their constitutional argument at the summary judgment phase.  If the parties wish to revisit the constitutionality of the junk-fax ban, the Court would find it helpful to address all the issues identified above and provide the Court with any extrinsic evidence that they deem relevant to the interests served by the junk-fax ban.

## CONCLUSION

Defendants' motion to dismiss (Doc. 21) is **DENIED** without prejudice to Defendants' ability to re-raise their constitutional argument at the summary judgment stage.  **No later than March 26, 2021**, Defendants shall answer Scoma's complaint.

**ORDERED** in Fort Myers, Florida, on March 12, 2021.

*/s/ John L. Badalamenti*

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE