UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOMA CHIROPRACTIC, P.A., a Florida
corporation, individually and as the
representative of a class of similarly situated
persons,

      Plaintiff,

v.                                                  Case No. 2:20-cv-430-JLB-MRM

NATIONAL SPINE AND PAIN CENTERS
LLC, a Delaware limited liability company,
SPINE CENTER OF FLORIDA, LLC, and
PAIN MANAGEMENT CONSULTANTS OF
SOUTHWEST FLORIDA, P.L., Florida
limited liability companies,

      Defendants.

## ORDER

Plaintiff Scoma Chiropractic, P.A. ("Scoma") as representative of a putative class, moves for authorization to subpoena third-party phone carriers under the Cable Communications Policy Act of 1984 ("Cable Act"). 47 U.S.C. §§ 521–73. Defendants National Spine and Pain Centers, LLC, Spine Center of Florida, LLC, and Pain Management Consultants of Southwest Florida, P.L. oppose the motion as to the scope of the subpoenas but otherwise do not object. After careful review, the Court **GRANTS** Scoma's motion (Doc. 55) in full.

### BACKGROUND

Scoma received an unsolicited fax from Defendants advertising telemedicine services and "in-office visits for urgent matters." (Doc. 1-1.) In response, Scoma

filed a class action complaint against Defendants for violating the Telephone Consumer Protection Act's (TCPA) junk-fax provision. (Doc. 1.) According to Scoma, Defendants' advertisement was transmitted 47,619 times by Upland Software, Inc. "to 11,193 unique phone numbers," a list of which Scoma possesses. (Doc. 55-1 at 2.) Neither side knows what proportion of the faxes' recipients used standalone fax machines versus online fax services. The distinction is significant because recent Federal Communications Commission (FCC) rulings have interpreted the TCPA as not applying to online fax services.[1] Courts are divided on whether the FCC's rulings are entitled to deference.[2] Scoma does not concede that the FCC's rulings are correct. As a contingency plan, however, Scoma suggests that it can distinguish between the two types of fax recipients using a three-step method:

1. Subpoena the Local Number Portability Administrator ("LNPA") of the Number Portability Administrative Center ("NPAC") to identify the carriers of the 11,193 numbers.[3]

---

[1] In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot. Act of 2005, No. 05-338, 2019 WL 6712128, at *3 (OHMSV Dec. 9, 2019); In the Matter of Joseph T. Ryerson & Son, Inc. Petition for Declaratory Ruling Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, No. CG02-278, 2020 WL 5362216, at *3 (OHMSV Sept. 4, 2020).

[2] See generally Levine Hat Co. v. Innate Intel., LLC, No. 4:16-cv-01132 SNLJ, 2021 WL 1889869, at *8 (E.D. Mo. May 11, 2021) (collecting cases).

[3] The NPAC is a data registry under the FCC's umbrella; it administers a database of phone numbers and facilitates portability of phone numbers between carriers. The LNPA is a government contractor that operates the NPAC. See In re Neustar Sec., 83 F. Supp. 3d 671, 674–75 (E.D. Va. 2015).

    2.    Use the response to the first subpoena to serve a second round of subpoenas on the identified phone carriers and identify whether the subscriber of each number was using online fax services on the date of the faxing in the class definition.

    3.    Provide this Court with the option to exclude all telephone numbers where the subscriber was using online fax services.

(Doc. 55-1 at 3.) Step one of this process is apparently already complete, and Scoma is "prepared to issue over 90 subpoenas for step two." (Id.) These subpoenas would authorize the phone carriers of each number at issue to disclose: (1) whether the carrier provided online fax services to the subscriber of the number, and (2) the name and address of the subscriber. (Doc. 55-2 at 1–2.)

    Defendants do not oppose Scoma's approach per se, but they do oppose its scope. Instead of issuing ninety subpoenas to all the carriers identified by the LNPA, Defendants propose a staggered process: the Court should authorize Scoma to subpoena only the "top three" providers, which account for "over 40% of the putative class." (Doc. 56 at 3.) If Scoma is "successful in obtaining the needed information from the 'top three' providers," it can then seek additional authorization to "complete the process." (Id. at 4.) But if "the process does not work," then Defendants see no reason to "burden these non-parties with unnecessary work." (Id. at 5.) Defendants also read the Cable Act to mean that carriers "may" provide (rather than "must" provide) personal information when authorized by court order under the Cable Act. (Doc. 56 at 9–10.) Accordingly, Defendants argue that the

3

Court's authorization should make clear that carriers may elect not to respond irrespective of court authorization. (Id.)

## DISCUSSION

Third-party subpoenas are governed by Federal Rule of Civil Procedure 45, but Rule 45 "must be read in conjunction with Federal Rule of Civil Procedure 26 because the latter rule clearly defines the scope of discovery for all discovery devices." Hatcher v. Precoat Metals, 271 F.R.D. 674, 675 (N.D. Ala. 2010) (internal quotation and citation omitted). Thus, as with all discovery, a party may use a subpoena to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. Information is relevant if "it has any tendency to make a fact more or less probable," and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)–(b).

Scoma's proposed subpoenas are based on its well-justified assumption that Defendants will adopt the FCC's most recent position, i.e., that the TCPA's junk-fax provision does not extend to online fax services. Without conceding that the FCC's position is correct, Scoma recognizes that it may be "necessary to distinguish between stand-alone fax recipients [and] online fax service recipients." (Doc. 55-1 at 3.) Hence, Scoma has proposed its three-step plan to subpoena the carriers for information about the 11,193 numbers of the fax recipients in this case. Under the Cable Act, a cable operator is generally prohibited from disclosing any personally identifiable information about subscribers without prior written consent or a

4

number of statutory exceptions. 47 U.S.C. § 551(c). One of these exceptions allows a cable operator to disclose such information when "made pursuant to a court order authorizing such disclosure [and] if the subscriber is notified of such order by the person to whom the order is directed." Id., § 551(c)(2)(B). A subpoena from this Court would satisfy the exception.[4]

Defendants readily admit that they will rely on the FCC's rulings to argue that the TCPA does not extend to online fax services. But, as explained earlier, Defendants do not categorically oppose Scoma's approach; they only oppose its scope. Instead of issuing ninety subpoenas at once, Defendants argue that Scoma's subpoenas should initially be limited to the "top three" carriers. (Doc. 56 at 3.) If this first round is "successful," Scoma may obtain authorization for additional subpoenas. (Id. at 4.) But issuing all of the subpoenas at once, according to Defendants, would burden the carriers with "unnecessary work." (Id.)

The Court sees no reason why Defendants have standing to challenge Scoma's subpoenas based on any "unnecessary work" created for the carriers. A party cannot challenge a third-party subpoena unless the challenge implicates a "personal right or privilege with respect to the materials subpoenaed." Brown v. Braddick, 595 F.2d 961, 967 (5th Cir. 1979). This excludes challenges "on the grounds of oppression and undue burden . . . where the non-parties have not

---

[4] Defendants acknowledge that some district courts have held that only a government entity may obtain personally identifiable information under the Cable Act, but the majority of courts to have addressed this issue do not read the statute that way. (Doc. 56 at 9–10 n.7.)

5

objected on those grounds." Auto-Owners Ins. Co. v. Se. Floating Docks, Inc., 231 F.R.D. 426, 429 (M.D. Fla. 2005) (citation omitted). For that reason alone, the Court may dispense with Defendants' arguments. Even so, Defendants' arguments are not persuasive on the merits.

Defendants rely heavily on a Report and Recommendation where the Magistrate Judge recommended rejecting the same three-step discovery process now proposed by Scoma in the context of a motion to certify class. Scoma Chiropractic, P.A. v. Mastercard Int'l Inc., No. 2:16-cv-41-FtM-66MRM, 2021 WL 720347, at *16–18 (M.D. Fla. Jan. 29, 2021). The Magistrate Judge analyzed the issue as a component of administrative feasibility, which he determined was a necessary prerequisite to class certification in the Eleventh Circuit. Id. at *15. Soon afterwards, the Eleventh Circuit clarified that administrative feasibility "is not a requirement for certification." Cherry v. Dometic Corp., 986 F.3d 1296, 1301 (11th Cir. 2021). As a result, the Court sua sponte vacated the Magistrate Judge's Report and Recommendation as moot. Scoma Chiropractic, P.A. v. Dental Equities, LLC, No. 2:16-cv-41-JLB-MRM, 2021 WL 1566668, at *5 (M.D. Fla. Apr. 21, 2021). Despite the vacatur, Defendants argue that the analysis in the Report and Recommendation holds true for this case. The Court does not agree.

The Report and Recommendation analyzed Scoma's three-step process as a post-certification method of tracking down class members who fell within the putative class definition. In this case, Scoma intends to use the process as a pre-certification method of distinguishing between fax recipients who used standalone

6

fax machines and those who used online fax services. This distinction is relevant because Defendants intend to argue that users of online fax services have no cause of action under the TCPA and therefore cannot prevail on the merits. Because the Report and Recommendation analyzed the question from an entirely different procedural perspective, it is less persuasive here. Moreover, regardless of whether TCPA coverage is a merits question or a certification question, the requested discovery would be valuable because it would allow the Court and the parties to narrow the class-based claims whenever the question ultimately is resolved.

Defendants' comparison also fails from a factual standpoint. At the time of the Report and Recommendation, Scoma had apparently not yet executed any part of its proposed three-step process. Here, by contrast, Scoma has already performed step one and received the carrier information from the LNPA. Another factual distinction is the sheer volume of phone numbers at issue in the Report and Recommendation. The Magistrate Judge was concerned that Scoma intended to subpoena information regarding 381,000 phone numbers—a much greater number than in the cases Scoma relied on. Scoma Chiropractic, P.A., 2021 WL 720347, at *17. But here, there are only 11,193 unique numbers. Other courts have permitted subpoenas in cases with a similar volume of numbers. Id. (indirectly citing Physicians Healthsource, Inc. v. Stryker Sales Corp., No. 1:12-CV-729, 2014 WL 11429029, at *1 (W.D. Mich. Feb. 20, 2014)).

Defendants' final argument is that the Court's order should clarify that carriers are not required to respond to Scoma's subpoenas. (Doc. 56 at 9–10.) Their

argument is based on language from 47 U.S.C. § 551(c)(2), which provides that a cable operator "may disclose" personally identifiable information if one of the statutory exceptions is fulfilled. The Court interprets Defendants' argument to mean that a carrier's response to a court order authorizing disclosure of personally identifiable information is always discretionary, regardless of what form the request might take. The Court does not agree.

In the context of a subpoena, the "may" language in the statute implies that the carrier should be given an opportunity to file an objection or a motion to quash. See, e.g., Next Phase Distribution, Inc. v. John Does 1-27, 284 F.R.D. 165, 172 (S.D.N.Y. 2012). Defendants cite no case law—and the Court has uncovered none—to suggest that the Cable Act affords carriers the privilege of ignoring a subpoena absent some legal basis to do so. The Court will, however, provide the carriers with a reasonable amount of time to challenge the subpoenas.[5]

## CONCLUSION

For the reasons above, it is **ORDERED**:

1. Scoma's motion for entry of authorization order under the Cable Act (Doc. 55) is **GRANTED**.

2. Scoma may immediately serve Rule 45 subpoenas on the third-party phone carriers of all phone numbers of the members in the putative class, as defined in paragraph 22 of the complaint, to determine: (a) the

---

[5] The Court takes no position on whether any particular subscriber would have standing to challenge a subpoena against the carrier under these circumstances. But the Court will provide the subscribers with an opportunity to challenge the subpoenas as well.

        name and address of the subscriber associated with each phone number during the time period set forth in the class definition, and (b) whether the carriers provided online fax services to each subscriber during the time period set forth in the class definition.

3. The phone carriers shall have thirty (30) days after being served with the subpoenas to: (a) assert any opposition to the subpoenas, and (b) notify the subscribers that their name and address are being sought by Scoma under the Cable Act. The carriers may provide notice to the subscribers using any reasonable means. For purposes of this order, opposition includes motions to shift costs of compliance with the subpoenas if such costs prove significant.

4. Each subscriber whose name and address are sought shall have thirty (30) days after receiving notice from their carrier to assert any opposition to the subpoenas.

5. Any personally identifiable information that Scoma obtains in response to its subpoenas must be used only for purposes of this case and in a manner that complies with this Court's Agreed Qualified Protective Order of February 12, 2021 (Doc. 52).

**ORDERED** in Fort Myers, Florida, on October 27, 2021.

*/s/ John L. Badalamenti*
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

9