## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

SCOMA CHIROPRACTIC, P.A., a )
Florida corporation, individually and )
as the representative of a class of )
similarly-situated persons, )
           )    Case No.: 2:20-cv-430 -FtM-66MRM
         Plaintiff, )
           )
v. )
           )
NATIONAL SPINE AND PAIN )
CENTERS LLC, a Delaware limited )
liability company, SPINE CENTER )
OF FL, LLC and PAIN )
MANAGEMENT CONSULTANTS )
OF SOUTHWEST FLORIDA, P.L., )
Florida limited liability companies, )
           )
         Defendants. )

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION (AND MEMORANDUM OF LAW) FOR CLASS CERTIFICATION

Wallace C. Solberg – *pro hac vice*
Ryan M. Kelly – FL Bar No.: 90110
Ross M. Good – FL. Bar No.:  116405
ANDERSON + WANCA
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
wsolberg@andersonwanca.com
rkelly@andersonwanca.com
rgood@andersonwanca.com

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

Table of Contents..........................................................................................................i

Table of Authorities.....................................................................................................ii

Argument ....................................................................................................................1

I.    Class B is ascertainable, and any Rule 23(b)(3)(D)
      manageability concerns are insufficient to render
      class certification inappropriate..........................................................................1

II.   The TCPA applies to "online faxes." ...................................................................7

III.  NSPC fails to offer any substantial response to
      Plaintiff's showing that online fax service recipients
      have Article III standing .....................................................................................9

III.  NSPC's numerosity challenge as to Class B, and its
      challenges to typicality and the accuracy of the fax logs, are unsupportable. ......10

V.    NSPC's attacks on Rule 23(b)(3) predominance fail ...........................................11

VI.   Plaintiff has established Rule 23(b)(3) superiority...............................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*,
    2018 WL 5891494 (S.D. Fla. Nov. 9, 2018)...........................................................6

*Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies*,
    322 F.R.D. 458 (N.D. Ill. 2017) ...............................................................14

*Cherry v. Dometic Corp.*,
    986 F.3d 1296 (11th Cir. 2011) ......................................................12, 13

*Daisy, Inc. v. Mobile Mini, Inc.*,
    489 F. Supp. 3d 1287 (M.D. Fla. 2020) ......................................................9

*Eric B. Fromer Chiropractic, Inc. v. Si-Bone, Inc.*,
    2019 WL 3577050 (N.D. Cal. Aug. 5, 2019) ........................................10

*Fauley v. Royal Canin U.S.A., Inc.*,
    2017 WL 2955351 (N.D. Ill. July 10, 2017)...........................................10

*G & G Closed Cir. Events, LLC v. Castillo*,
    2016 WL 3551634 (N.D. Ill. June 30, 2016) .........................................5

*Gene & Gene LLC v. BioPay LLC*,
    541 F3d 318 (5th Cir. 2008) ...............................................................14

*Hughes v. Kore of Ind. Enters., Inc.*,
    731 F.3d 672 (7th Cir. 2013) ...............................................................15

*j2 Glob. Commc'ns v. Protus*,
    2010 WL 9446806 (C.D. Cal. Oct. 1, 2010)...........................................10

*Johansen v. GVN Michigan, Inc.*,
    2015 WL 3823036 (N.D. Ill. June 18, 2015).........................................15

*Karhu v. Vital Pharma., Inc.*,
    622 Fed. App'x 945 (11th Cir. 2015) ...................................................13

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Lyngaas v. Curaden AG,*
   992 F.3d 412 (6th Cir. 2021) ...................................................................7, 8

*Mais v. Gulf Coast Collection Bureau, Inc.,*
   768 F.3d 1110 (11th Cir. 2014) ...............................................................14

*Marx v. General Revenue Corp.,*
   568 U.S. 371 (2013) ....................................................................................8

*Meyer v. Capital Alliance Group,*
   2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ...........................................10

*Muransky v. Godiva Chocolatier, Inc.,*
   979 F.3d 917 (11th Cir. 2020) ....................................................................9

*N.L.R.B. v. SW General, Inc.,*
   137 S.Ct. 929 (2017) ...................................................................................8

*Palm Beach Golf Center-Boca, Inc. v. Sarris,*
   2014 WL 3962595 (11th Cir. July 17, 2014) ...........................................15

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,*
   781 F.3d 1245 (11th Cir. 2015) .....................................................9, 14, 15

*Physicians Healthsource, Inc. v. A-S Medication Sols.,*
   318 F. Supp. 3d 712 (N.D. Ill. 2016) .......................................................14

*Rensel v. Centra Tech, Inc.,*
   2 F.4th 1359 (11th Cir. 2021) ...................................................................12

*Romeo v. Antero Resources Corp.,*
   2020 WL 1430468 (N.D. W. Va. Mar. 23, 2020) .......................................6

*Salcedo v. Hanna,*
   936 F.3d 1162 (11th Cir. 2019) ..................................................................9

# TABLE OF AUTHORITIES

**Page**

## Cases

*Scoma v. Dental Equities*,
2021 WL 6105590 (M.D. Fla. Dec. 23, 2021)............................................ *in passim*

*Schultz v. Am. Airlines, Inc.*,
449 F. Supp. 3d 1301 (S.D. Fla. 2020) ....................................................6

*Sliwa v. Bright House Networks, LLC*,
333 F.R.D. 255 (M.D. Fla. 2019)...........................................................13

*U.S. v. Hill*,
643 F.3d 807 (11th Cir. 2011) ...............................................................6

*United States v. Watkins*,
10 Fed.4th 1179 (11th Cir. 2021)............................................................7

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) .............................................................12

*Wilson v. Badcock Home Furniture*,
329 F.R.D. 454 (M.D. Fla. 2018)...........................................................13

*Williams v. Mohawk Industries, Inc.*
568 F.3d 1350 (11th Cir. 2009) ......................................................11, 12

## STATUTES

47 U.S.C. § 227(a)(3) .........................................................................8

47 U.S.C. § 227(b)(1)(C)....................................................................15

## RULES & REGULATIONS

47 C.F.R. § 64.1200(a)(4)....................................................................15

Plaintiff, Scoma Chiropractic, P.A., submits its Reply to the Opposition to Class Certification filed by National Spine and Pain Centers, LLC, and Pain Management Consultants of Southwest Florida, P.L. (collectively, "NSPC" or "Defendants").

### Argument

NSPC's Opposition fails to address and thus concedes that Plaintiff satisfies Rule 23(a)(2) commonality and Rule 23(a)(4) adequacy as to Plaintiff and counsel. (Doc. 98, Opp. at 1-35). Nor does NSPC challenge that the common classwide issues, including whether it is the "sender," whether the Faxes are advertisements, and whether the Faxes were sent from a telephone, computer, or other device. (*Id*.) NSPC's remaining arguments fail.

## I.   Class B is ascertainable, and any Rule 23(b)(3)(D) manageability concerns are insufficient to render class certification inappropriate.

In *Scoma v. Dental Equities*, 2021 WL 6105590, at *11 (M.D. Fla. Dec. 23, 2021), this Court held that the proposed stand-alone fax machine class was ascertainable and that any difficulties relating to Rule 23(b)(3)(D)'s manageability factor did not outweigh the factors balancing in favor of certification. The Court further held that the proposed class based on the subpoena process in that case was, "at the very least . . . a starting point from which" plaintiffs can use other methods if necessary, such as "self-identifying affidavits and subpoenas." *Id.*

The Court's *Dental Equities* holding above applies with equal force here. Plaintiff has performed the subpoena process and submitted the results to the Court. (*See* Doc. 84-5, Good Decl. ¶¶ 7-12). These results show that there are 7,137 members in Class

B based on the count of numbers for whom the carrier did not provide online fax service. NSPC does not contest this; instead, relying on nearly identical declarations obtained from 18 phone carries that ***did not*** provide online fax services, NSPC argues that Plaintiff's Class B "cannot be so" because the phone carriers (using Verizon as an example) "cannot determine whether any customers used an online fax service." (Opp. at 2). As discussed below, NSPC's argument is based on pure speculation.

 NSPC offers a chart which it claims sets forth various "scenarios" for online and "stand-alone" faxes.  (Opp. at 5-6). **Scenario II** (stand-alone fax machine) and **Scenario III** (private fax server, *see* 2003 FCC Order) are regulated by the TCPA, and **Scenario IV** (one company acts as both carrier and on-line fax service provider) is easily discernible under the subpoena process. That leaves **Scenario I and Scenario V**, neither of which can salvage NSPC's speculative arguments.

In **Scenario V**, the subscriber obtains a phone number from the carrier, but then call-forwards said phone number to an online fax service. (Opp. at 6).  The user would be listed as the subscriber but would use the "call-forwarded" online fax service.  (*Id.*) While a carrier cannot know historically whether call-forwarding is used, there is no rational reason to use call-forwarding to an online fax service. (*Id.*) Indeed, NSPC's expert witness, Ken Sponsler, admits that when a phone number is call-forwarded, the person or entity that is call-forwarding not only has to pay for the forwarded phone line, but also for the online fax service, that busy signals are a possibility, and that fax quality may be degraded.  (Doc. 84-3, Page ID 985-97, Sponsler Dep. at 36:9-19-

38:11).

Not surprisingly, Sponsler is *unaware of a single instance in any case of call-forwarding of a fax line to an online fax service*, Doc. 84-3, Page ID 990-91, Sponsler Dep. at 41:8-42:3, nor is Plaintiff's expert, Robert Biggerstaff, (Doc. 84-5, Page ID 1394, Biggerstaff Dep. at 174:1-10). In other words, NSPC's argument regarding **Scenario V** is just a conjured "what if" scenario, *unsupported by a single instance* of actual call-forwarding in this case or any other. Sponsler's "opinion"—it is "*very likely* that the fax forwarding feature was used by a number of putative class members," *see* Doc. 84-3, Page ID 986, Sponsler Dep. at 37:12-18; *id.* at Page ID 1042, Sponsler Ex. Report ¶ 55—is nothing more than speculation.

In **Scenario I**, a user receives online fax service from an intermediary online fax provider, *i.e.*, one which subscribes to a telephone-number service from a carrier. (Opp. at 6). The online fax service is listed in the carrier records as a subscriber (*i.e.*, "customer," *see* Exs. 26, 27). (*Id.*) Once again, NSPC fails to identify a single online fax service provider used by a putative class member other than those identified by Plaintiff in the subpoena process. It points to no instance wherein phone carriers that *admitted they did not provide online fax services* were actually selling phone services to an intermediary provider.

However, Plaintiff has identified several online fax service providers which are not phone carriers (**Scenario I**) using the subpoena process. Plaintiff will move to file under seal as Exhibits 26 and 27, the responses of Bandwidth.com and Peerless

Network. Customers of these entities are online fax service providers fitting **Scenario I.** (Opp. at 6). The numbers in these responses were treated as "online fax service" and are not part of proposed Class B.  On the other hand, some phone carrier subpoena respondents that did not provide online fax services did identify their subscribers, and none were online fax service providers.  Plaintiff will move to file under seal as Exhibits 28 and 29, the responses of Consolidated.com and T3 Communications, which list phone numbers and identify subscribers—none are online fax service providers.

Finally, NSPC obtained a declaration from Scott County Telephone Cooperative ("Scott County"), which states it does not provide online fax services and which has the standard "does not have a mechanism" language of many of the declarations. (Doc. 98-1 at Page ID 1893-94). Plaintiff will move to file under seal as Exhibit 30 Scott County's response to Plaintiff's subpoena, which makes clear the sole subscriber to their service is not an online fax service.

Unable to offer any specific instances as to call-forwarding or intermediary providers, NSPC claims the process is deficient because it differs from the process proposed to the Court. It also argues the declaration submitted by Ross Good ("Good Declaration") (Doc. 84-5) detailing the subpoena process results does not comply with the rules of expert testimony and is hearsay. These arguments miss their mark.

First, the premise of NSPC's attack is flawed—the Court's approval of the Cable Act motion wasn't based on an exact subpoena process. Instead, it was granted because a subpoena could identify relevant information and, as to responding cable companies, the order was a requirement. In fact, it has been Plaintiff's experience that

phone carriers not subject to the Cable Act often insist on such an order.

Second, in its Cable Act motion, Plaintiff submitted it could distinguish stand-alone from online fax recipients using a three-step process, the second of which was to "use the subpoena response to subpoena each identified phone carrier to identify whether the subscriber of each phone number was utilizing 'online fax services' on the date of the faxing included in the class definition." (Doc. 55-1 at 3). While the Court's Order stated that Plaintiff "may" serve the subpoenas to determine the name and address of the subscriber associated with each number and whether the carriers provided online fax services to each subscriber (Doc. 69 at 8-9), Plaintiff's reply in support of the motion contemplated that there may be no need to identify subscribers as Plaintiff already had their fax numbers (and thus had the identity of the targets).

Third, NSPC was aware of the subpoena process, knew what each subpoena requested, and knew what its expert had speculated/contended about the process. (Doc. 84-3, Page ID 1043, Sponsler Report ¶ 57-58). The process was conducted during discovery, which was extended to allow NSPC additional time to conduct discovery regarding the process. (Docs. 79, 80). Although NSPC obtained declarations from 18 subpoena respondents, and although it had ample opportunity to do so, NSPC failed to obtain the evidence *to confirm* its theory that there *must be* "intermediary providers" among the "did not provide online fax service" declarants. In other words, NSPC was again content to rely on "what-if" speculation.

Fourth, the Good Declaration is not an expert report—it (like Sponsler's "Supplemental Report," Doc. 98-2, Page ID 1899-1910, served without leave of Court

on May 16, 2022, months after the close of expert discovery) is not "based on scientific, technical, or other specialized knowledge within the scope of [Federal Rule of Evidence] 702." Fed. R. Evid. 701. Rather, the Good Declaration is merely a compilation of the responses to the subpoena process and is based on Good's personal understanding of those documents. The Eleventh Circuit has concluded that such testimony of particularized knowledge is permissible under Federal Rule of Evidence 701. *A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, 2018 WL 5891494, at * 3 (S.D. Fla. Nov. 9, 2018) (citing *U.S. v. Hill*, 643 F.3d 807, 841 (11th Cir. 2011)).

The provision of personal knowledge is also permissible for class certification since it is important to the requisite analysis. *Romeo v. Antero Resources Corp.*, 2020 WL 1430468, at *5 (N.D. W. Va. Mar. 23, 2020) (declining to find that attorney declaration was expert testimony and permitting it because it assisted in the class certification analysis). The chart accompanying the Good Declaration is illustrative; it takes the subpoena responses of the third-party phone carries regarding whether they provided on-line fax services and correlates them with telephone numbers of the putative class.

Fifth, neither the compiled chart nor the declaration is hearsay or implicates the attorney-witness rule. Courts routinely approve chart summaries and data compilations as exceptions to the prohibition against hearsay. *Schultz v. Am. Airlines, Inc.*, 449 F. Supp. 3d 1301, 1308 (S.D. Fla. 2020). In fact, Federal Rule of Evidence 1006 expressly permits the use of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." *Id.* And as to the attorney-witness rule, the Good

Declaration is permissible because it is a reflection of the declarant's personal knowledge, not the testimony of the party. *See Romeo*, 2020 WL 1430468, at *5.

NSPC's complaint about the absence of the underlying subpoena responses in the Good Declaration ignores that NSPC possesses the same data, and was free to challenge it. Tellingly, it did not. Regardless, as demonstrated above, the Good Declaration and compilation chart are admissible. Plaintiff will provide the subpoena responses to the Court for an *in camera* inspection if the Court so requires.

In sum, a class action defendant can always speculate, without actual evidence, a series of what-ifs, claim the plaintiff cannot disprove those hypotheticals, and argue that it should prevail, as NSPC does here. The burden of proof in a Rule 23 motion is a preponderance of the evidence, defined as evidence "which is more convincing than the evidence offered in opposition to it." *United States v. Watkins*, 10 F.4th 1179, 1184 (11th Cir. 2021). Plaintiff's showing as to the ascertainability and manageability of Class B more than meets that standard.

## II.   The TCPA applies to "online faxes."

NSPC argues that the TCPA does not apply to faxes sent to online fax services because (i) *Amerifactors* is entitled to *Chevron* deference, or alternatively, *Skidmore* deference; (ii) the doctrine of *expressio unius est exclusio alterius*; and (iii) the dissent in *Lyngaas v. Curaden AG*, 992 F.3d 412, 425-26 (6th Cir. 2021).  (Opp. at 11-15). Plaintiff argued *Amerifactors* is an interpretative ruling, and as such, is not accorded *Chevron* deference. (Pl.'s Br. at 31-35). NSPC fails to address this point. (*See* Opp. at 1-35). Accordingly, on this basis alone, *Chevron* deference does not apply to *Amerifactors*.

Plaintiff also argued *Chevron* deference did not apply based on the plain language of the definition of telephone facsimile machine, citing *Lyngaas*, 992 F.3d at 425-26. (Doc. 84, Pl.'s Br. at 25-31). NSPC's attempt to avoid *Lyngaas* by arguing that *Amerifactors* was "not briefed by either party," or that the Sixth Circuit would not have applied *Amerifactors* retroactively, Opp. at 14, misses the point—*Lyngaas* is briefed here, and its holding (discussed in Pl.'s Br. at 26-31) is strongly persuasive that *Chevron* does not apply, making *Amerifactors* irrelevant.

NSPC's reliance on the dissent in *Lyngaas* is misplaced, as the majority in *Lyngaas* explains. (Pl.'s Br. at 27, 33). Plaintiff addressed *expressio unius* in its opening brief, *see* Pl.'s Br. at 27, and in response to NSPC, notes that the TCPA defines "telephone facsimile machine" in part as "***equipment*** which has the capacity . . ." 47 U.S.C. § 227(a)(3) (emphasis added). The Supreme Court has long held that the *expressio unius* canon does not apply if there are "contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion,'" *Marx v. General Revenue Corp.*, 568 U.S. 371, 380 (2013) (citations omitted), and it applies only when "circumstances support a sensible inference that the term left out must have been meant to be excluded." *N.L.R.B. v. SW General, Inc.*, 137 S.Ct. 929, 940 (2017).  The "contrary indications" here are that the TCPA has expressly defined "telephone facsimile machine" to include "any equipment," and there can be no "sensible inference" that Congress meant to exclude "any equipment."

Plaintiff argued that *Amerifactors* (and *Ryerson*) are not entitled to *Skidmore*

deference and further, that *Amerifactors* is inconsistent and does not apply by its own terms. (Pl.'s Br. at 31-35). NSPC's "*Skidmore*" argument is a single paragraph stating that even if *Chevron* did not apply, *Amerifactors* should still be given *Skidmore* deference. (Opp. at 13). NSPC's conclusory assertions fail to meet Plaintiff's arguments.

## III. NSPC fails to offer any substantial response to Plaintiff's showing that online fax service recipients have Article III standing.

Plaintiff argued that online fax service recipients have standing because they suffered the very harm the TCPA was meant to prevent—being sent an unsolicited advertisement. (Pl.'s Br. at 16-25). Plaintiff addressed this Court's contrary ruling in *Dental Equities* and the ruling in *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287 (M.D. Fla. 2020). NSPC has not responded to these arguments, offering instead one sentence each for both cases (Opp. at 15), and citing to *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), which held that receipt of a single text message was insufficient to establish standing, and which was decided before *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020). In fact, receipt of a ***single*** fax advertisement is sufficient to establish standing, and a plaintiff need not have printed nor read the fax. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015).

NSPC's attempt to ascribe to Plaintiff the position that an 'online fax service' is the recipient of the fax, *see* Opp. at 16-17, misses the mark. It is the target of an unsolicited fax ad, sent either to an online fax service or stand-alone fax machine, that has standing. (Pl.'s Br. at 16-25). *See also j2 Glob. Commc'ns v. Protus*, 2010 WL 9446806, at *8 (C.D. Cal. Oct. 1, 2010) (the "'recipient' is the person to whom the fax is directed,

and not an unknown intermediary … who intercepts the transmission"). NSPC's argument that the FCC "has already ruled that such users [online fax service subscribers] do not have a TCPA claim," (Opp. at 16), misunderstands that *Spokeo* considers the judgment of Congress, not the FCC (or the Bureau). (Pl.'s Br. at 25).

Finally, NSPC attempts to bootstrap its lack of an opt out notice into a standing argument. (Opp. at 25 n. 7). Courts have repeatedly rejected this gambit. *Eric B. Fromer Chiropractic, Inc. v. Si-Bone, Inc.*, 2019 WL 3577050, at *4 (N.D. Cal. Aug. 5, 2019); *Fauley v. Royal Canin U.S.A., Inc.*, 2017 WL 2955351, at *2 (N.D. Ill. July 10, 2017); *Meyer v. Capital Alliance Group*, 2017 WL 5138316, at *13 (S.D. Cal. Nov. 6, 2017).

## IV.   NSPC's numerosity challenge as to Class B, and its challenges to typicality and the accuracy of the fax logs, are unsupportable.

NSPC's argument that Plaintiff has not offered "any viable evidence that Class B is numerous" (Opp. at 17-18) is premised on its attack of the subpoena process, and fails for the same reason, and because the fax logs unequivocally demonstrate that numerosity is satisfied, and easily meet the predominance of the evidence standard.

Next, NSPC argues that Plaintiff is not typical because "the undisputed evidence is that NSPC sent the faxes in question to medical providers who refer patients to NSPC, and regularly communicate with NSPC about these referrals." (Opp. at 18). NSPC has failed to establish it sent fax ads only to referring physicians, and it overstates Koleszar's testimony, who has no specific knowledge as to any "regular communications" with the physicians. (*See* Doc. 84-2, Page ID 623-25, Koleszar Dep. at 91:10-93:23). Most importantly, Plaintiff's claims are typical because

they arise "from the same event or pattern or practice," NSPC's fax blasting of unsolicited fax ads, and "are based on the same legal theory," violation of the TCPA. *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009).

Finally, NSPC's challenge as to the accuracy of the fax logs is baseless. NSPC produced the fax logs used to determine success transmissions; their authenticity is not in doubt. (*See* Pl.'s Ex. 2). NSPC is left only to argue the accuracy of the logs, a classwide merits issue, and its arguments fail in this regard as well. The fax broadcaster, Interfax, through its representative, testified that the fax logs are accurate and reliable, and NSPC did not complain about any related accuracy issues. (Hardin Dep., attached as Exhibit 31, at 23:13-24:10).  Moreover, according to Biggerstaff, the logs from the email attachments produced by NSPC, Pl.'s Ex. 2, "were in a robust and unambiguously parsable hypertext table format (as opposed to CSV as were the previous logs) so there is no additional processing needed to handle misalignments, embedded commas, or other issues that concerned Mr. Sponsler."  (Doc. 84-2, Page ID 938, Biggerstaff II at ¶ 18.) Interfax supports Biggerstaff's conclusion that any misalignments do not call into question the accuracy or reliability of the fax logs. (Hardin Dep. at 58:6-12).

## V.    NSPC's attacks on Rule 23(b)(3) predominance fail.

NSPC's argues that if Plaintiff "must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of [members'] individual claims," certification must be denied. (Opp. at 20) (citing *Williams*, 568 F.3d at 1357). NSPC adds that "if common issues

11

truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiff to or from the class should not have a substantial effect on the substance or quantity of evidence offered."   (*Id.* (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009)). But the evidence and arguments for "any other plaintiffs" have already been submitted—the same fax logs, Faxes, subpoena process, lack of permission, and legal arguments are germane. This argument is a nonstarter for NSPC.

NSPC's ***predominance*** argument that "for every possible member of both proposed classes, the Court would need to resolve and individual question: what kind of device or service did the class member use to receive each fax" (Opp. at 20) is merely a dressed-up attempt to insist on administrative feasibility of identifying class members under predominance as a condition for certification, which is contrary to the controlling authority of *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1301-02 (11th Cir. 2011), and *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021).

A proposed class is ascertainable "if it is adequately defined such that membership is capable of determination," *Cherry*, 986 F.3d at 1304, as both Classes A and B are here.   (Pl.'s Br. at 1-2). Moreover, the "[a]dministrative feasibility" of identifying class members is not an "aspect of ascertainability," and is not a requirement for certification. *Id*. In fact, "aside for its limited relevance to Rule 23(b)(3)(D), administrative feasibility ***is entirely unrelated*** to either Rule 23(a) or (b)." *Id*. Assuming *arguendo* that the Court holds that online fax service recipients have

Article III standing, and that the TCPA regulates unsolicited fax ads received by online fax services (or finds that to be a classwide question in light of Plaintiff's Article III showing), Class A is easily ascertainable. The subpoena process explained above makes Class B "manageable" under Rule 23(b)(3)(D), "which is but one factor in a balancing analysis," and demonstrates that any difficulties in identifying Class B "do not outweigh the factors that countenance in favor of class certification." *Dental Equities*, 2021 WL 6105590, at \*11.

NSPC's argument that Plaintiff waived the use of affidavits (or further subpoenas), to identify Class B (Opp. at 23-24) is untenable. NSPC's attack on the Court's suggested affidavit/subpoena possibility (from *Dental Equities*) is mistakenly supported by cases that pre-date *Cherry* and impermissibly rely on administrative feasibility. (*See* Opp. at 25) (citing *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 277 (M.D. Fla. 2019); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 458 (M.D. Fla. 2018); *Karhu v. Vital Pharma., Inc.*, 622 Fed. App'x 945, 950 (11th Cir. 2015)

NSPC next argues that predominance cannot be satisfied as to "prior express invitation or permission." (Opp. at 25-28). Contrary to NSPC's premise, this *is* a fax-blast case, as NSPC repeatedly admits. (*See, e.g.*, Doc. 95-1, Page ID 1508-1510*; see also id*. at 1515 ("**Fax blasts** are simply one piece of a broader marketing plan . . . that will help ensure we stay top-of-mind among our referral sources"). NSPC's permission argument fails because it has no evidence of permission, and not surprisingly has failed to submit any such evidence. (*See* Pl.'s Br. at 5-6, 14-15).

NSPC's lack of evidence of permission is the classwide proof that permission does not create individual issues here. Accordingly, the cases relied upon by NSPC for the proposition that courts routinely deny class certification based on permission (Opp. at 28) are inapposite. NSPC's reliance on *Gene & Gene LLC v. BioPay LLC*, 541 F3d 318, 329 (5th Cir. 2008), where the court held that plaintiff "failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class" and, therefore, "individualized inquiries were unavoidable," brings into full relief NSPC's evidentiary shortfall here, namely," the "utter lack of evidence to support the defense." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies*, 322 F.R.D. 458, 469 n.10 (N.D. Ill. 2017) (distinguishing *Gene & Gene*). Even if NSPC is trying to claim permission based on referrals from physicians, that is a classwide issue—"do referrals constitute prior express permission to send fax ads." *Physicians Healthsource, Inc. v. A-S Medication Sols.*, 318 F. Supp. 3d 712, 722-23 (N.D. Ill. 2016).

Finally, NSPC's reliance on call a case, *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1118 (11th Cir. 2014), and on a fax case that relies chiefly on call cases, *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615 (3rd Cir. 2020), for its permission argument is unpersuasive. Again, there is no evidence of permission here. Moreover, as the FCC explained as amicus in *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S.*, 781 F.3d 1245, 1255 (11th Cir. 2015), and as the Eleventh Circuit accepted, "[s]eparate subsections of the statute address voice telephone calls and facsimile advertisements" and "FCC rules implementing those provisions treat voice calls and faxes differently." (*See Palm Beach Golf Center-Boca, Inc. v. Sarris*, FCC Letter

Brief, 2014 WL 3962595, at *2 (11th Cir. July 17, 2014). NSPC has offered no evidence of prior express invitation or permission, which is what is required in a TCPA fax case.

NSPC's predominance argument as to "established business relationship" (Opp. at 25-26) fails because the Faxes have no opt out notice whatsoever, *see* Doc. 84-2, Page ID 513-527, precluding the EBR defense as a matter of law, meaning there can be no individual issues. *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(4).

NSPC's last two attacks, "which faxes caused harm," and "which faxes were actually received" (Opp. at 28-32), are nonstarters. Receipt of an unsolicited fax, whether via an online fax service or a stand-alone fax machine, establishes Article III standing, Pl.'s Br. at 16-25, and the fax logs show which Faxes were received.

## VI.   Plaintiff has established Rule 23(b)(3) superiority.

NSPC's superiority argument bootstraps its failed predominance arguments, *see* Opp. at 32, and on that basis fails for the same reasons. Plaintiff stands on its arguments regarding superiority. (Pl.'s Br. at 15-16 (citing *Dental Equities*, 2021 WL 6105590, at *12)). Plaintiff adds that "[a] class action, like litigation in general, has a deterrent as well as a compensatory objective." *Hughes v. Kore of Ind. Enters., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013). The idea that individual TCPA actions would deter fax advertisers such as NSPC rings hollow, as does NSPC's argument that is premised on conceding willful conduct, *i.e.*, $1,500 per violation. Finally, in *Johansen v. GVN Michigan, Inc.*, 2015 WL 3823036, at *1 (N.D. Ill. June 18, 2015), Judge Posner stated the argument that the TCPA can't be enforced by a class action is "frivolous."

Respectfully submitted,


SCOMA CHIROPRACTIC, P.A., individually and
as the representative of a class of similarly-situated
persons


By:      /s/ Ryan M. Kelly
         Ryan M. Kelly (FL Bar #90110)

         Ross M. Good (FL Bar #116405)
         Wallace C. Solberg (*pro hac vice*)
         ANDERSON + WANCA
         3701 Algonquin Road, Suite 500
         Rolling Meadows, IL  60008
         Telephone: (847) 368-1500
         Facsimile: (847) 368-1501
         Email:  rkelly@andersonwanca.com
                  rgood@andersonwanca.com
                  wsolberg@andersonwanca.com


**CERTIFICATE OF SERVICE**


        I hereby certify that on May 25, 2022, I electronically filed the foregoing with
the Clerk of the Court using the CM/ECF system which will send notification of
such filing to all attorneys of record.


                         s/ Ryan M. Kelly


16